Robert BLASSINGILL, Appellant,

v.

WATERMAN STEAMSHIP CORPORA-
TION, a corporation, Appellee.

No. 19029.

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1964.

Ben Margolis, Margolis & McTernan,
Los Angeles, Cal., for appellant.

James D. Garibaldi, Warren J. Lane,
Abe Mutchnik, Los Angeles, Cal., for
appellee.

Before JERTBERG, BROWNING and
DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Appellant Blassingill was plaintiff in
the trial court. His complaint, which
showed jurisdiction by reason of diver-
sity of citizenship, contains two counts,
one charging negligence, the other unsea-
worthiness of appellee's vessel. The ves-
sel was unloading at Wilmington, Cali-
fornia. Blassingill was a longshoreman,
employed by Metropolitan Stevedoring
Company, and was on board, performing
his duties. The charging paragraph of
the negligence count reads:

"At the time and place aforesaid,
defendant did negligently, carelessly

and recklessly fail to furnish plaintiff with a safe place in and about which to work and with safe gear and equipment with which to work in that the sling load of burlap bales which plaintiff was required to discharge was dangerously overloaded, and unstable, thereby creating the danger that it would fall on plaintiff and other members of the gang as it was being discharged."

The charging paragraph of the unseaworthiness count reads:

"At the time and place aforesaid, said vessel and her gear, appurtenances and appliances were unseaworthy, and defendant furnished plaintiff with an unsafe and unseaworthy place in and about which to work and gear with which to work in that the sling load of burlap bales which plaintiff was required to discharge was dangerously overloaded, and unstable, thereby creating the danger that it would fall on plaintiff and other members of the gang as it was being discharged."

Each count also charges that, as a result of the negligence or unseaworthiness, a sling load of bales fell apart, and one of the bales struck and injured Blassingill.

A jury returned a verdict for appellee, judgment was entered accordingly, and Blassingill appeals. He does not claim that the verdict is not supported by the evidence. His attack is upon the refusal of the court to give certain instructions, and upon certain instructions that the court gave, all relating to the issue of unseaworthiness.

We consider first the claim that the court should have told the jury, in substance, that the employment of an unsafe method of unloading would render the vessel "unseaworthy." [1] In considering whether the requested instructions should have been given, we apply the rule stated in Wong v. Swier, 9 Cir., 1959, 267 F.2d 749, 761, that a party "is entitled to have his theory of the case presented to the jury by proper [2] instructions, if there be any evidence to support it." That case was decided under the laws of Washington, but the rule is ap-

1. The refused instructions read:
"*Plaintiff's Proposed Instruction No. 7:*
"If a dangerous condition is created as a result of the method of loading or discharging cargo, the shipowners are liable to a longshoreman injured in the course of handling the cargo for injuries proximately resulting from the dangerous condition created by the method of loading or discharging. On the unseaworthiness count of the complaint, it is immaterial whether the shipowner did or did not use reasonable care with respect to the method of loading or discharging or whether the dangerous condition was caused by negligence attributable to the shipowners. If the dangerous condition existed the shipowner is liable for injuries proximately caused thereby regardless of any fault or lack thereof."
"*Plaintiff's Proposed Instruction No. 20:*
"A vessel is unseaworthy when the condition of the cargo creates an unreasonable risk of harm to the longshoremen in the course of discharge. If the cargo can be discharged with reasonable safety only by conducting the discharge in a certain manner and it is discharged

in a different manner involving an unreasonable risk of harm to the longshoreman, the vessel is thereby rendered unseaworthy."
"*Plaintiff's Proposed Instruction No. 12:*
"If the manner of discharging or handling cargo under conditions existing on a ship is dangerous unless certain precautions are taken or the work is performed in a certain manner, the shipowners have a non-delegable duty to warn longshoremen handling the cargo of such dangers and to instruct them with respect to proper and safe methods of handling the cargo."
"*Plaintiff's Proposed Instruction No. 22:*
"When a condition exists in the cargo or develops in the method of handling its discharge that creates unreasonable risk of harm to the longshoreman, the vessel is thereby rendered unseaworthy and a duty is imposed on the owners and operators of the vessel to correct the condition or provide additional safeguards."

2. The word "proper" deserves emphasis. The burden is upon counsel to present a correct instruction. If what he proposes

plicable in any case tried to the jury in a federal court. See, for example, the comment of Chief Justice Marshall in Douglass v. McAllister, 1806, 7 U.S. (3 Cranch) 298, 300, and of Mr. Justice Clifford in Insurance Company v. Baring, 1873, 87 U.S. (20 Wall.) 159, 161, 22 L. Ed. 250. We therefore state the evidence which, Blassingill asserts, would require that the requested instructions be given.[3]

At the time of the accident, bales of burlap were being hoisted from a hatch. The ship's gear was being used. The bales were hoisted from the hold by a single wire rope sling, upon which they were placed. The sling was then wrapped around the bales, and apparently fastened by a hook or a hook and eye. When the sling was attached to the winch cable, and it was raised, the sling "cinched" the bales together. Work began at about 8:00 A.M. and during the first three quarters of an hour only two bales at a time were placed in the sling. The hatch boss, an employee of the stevedoring company, then ordered that four bales at a time be lifted. The men protested, but were ordered to proceed. The bales were then taken out in loads of four, until about 11:30 A.M., when a load fell out of the sling and Blassingill was injured. Another such load had collapsed somewhat earlier. Putting two bales in the sling was a safe method of unloading them. Putting four bales in the sling was not. It is to this method of handling the bales that the proposed instructions were directed.

▆▆ Blassingill's position is well taken. The Supreme Court has said that an improper method of handling cargo can amount to unseaworthiness. (Morales v. City of Galveston, 1962, 370 U. S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412).

This was dictum. But it is fully supported by decisions of the lower federal courts, some of which have been cited by the Supreme Court as illustrative of the kinds of circumstances that can amount to unseaworthiness. (Knox v. United States Lines Co., 3 Cir., 1961, 294 F.2d 354—improper unloading of burlap rolls, by taking too many from the center of a pile, thereby causing one to fall from the side; Ballwanz v. Isthmian Lines, Inc., 4 Cir., 1963, 319 F.2d 457—unsafe method of tying heavy "spreaders" to cables when spreaders were being hoisted from hold, resulting in the fall of a spreader; Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555— improper rigging of bridles used in lifting a hatch cover which fell; Robillard v. A. L. Burbank Co., S.D.N.Y. 1960, 186 F.Supp. 193—similar to Knox. Robillard and Strika were cited by the Supreme Court in Gutierrez v. Waterman S.S. Corp., 1963, 373 U.S. 206, 214, 83 S.Ct. 1185, 10 L.Ed.2d 297.) The Frank and Willie, S.D.N.Y., 1891, 45 F. 488; The Julia Fowler, S.D.N.Y., 1892, 49 F. 277, and Wm. Johnson & Co. v. Johansen, 5 Cir., 1898, 86 F. 886, all involve what seems to us to be the use of unsafe methods of unloading. All three are cited by the Supreme Court in Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 100, 64 S.Ct. 455, 88 L.Ed. 561, although it characterized the latter two as involving defective tackle. The tackle, however, was defective only in the sense that it did not perform the work for which it was used. So here, the tackle was safe when used to handle two bales. The jury could find that it was unsafe when used to handle four. This would not be because it was physically defective, but only because it was used in a hazardous manner.

is incorrect, the court may reject it; the court is not required to recast it, although it may do so. (See Ursich v. da Rosa, 9 Cir., 1964, 328 F.2d 794, 797, and cases there cited.)

3. Appellee asserts that an instruction, stating the substance of what Blassingill's proposed instructions state, was given. The instruction referred to, however, was given in connection with the negligence count, and the court's instructions on the unseaworthiness count contain nothing similar. The instructions dealing with unseaworthiness deal only with the condition or character of the vessel and its equipment and cargo; not with the method of its use.

Closely analogous is the decision in Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413, where loading gear that was in good condition was overloaded, thereby causing it to fail. The case is really not one of defective equipment, but of an improper method of using it.

Appellee argues that it should not be liable for unseaworthiness because it provided sound gear, and it was the stevedoring company, not appellee, that used the gear improperly. Apparently, it was upon this theory that the court gave an instruction proposed by appellee, to which Blassingill objects:

" 'Seaworthy' means that the vessel and her equipment were reasonably fit for the purpose for which they were intended to be used. Perfection is not required. The shipowner discharges his duty if he furnishes and maintains a vessel reasonably adequate in materials, construction and equipment for the trade or service in which the vessel is employed." [4]

 It is now established, however, that it is no defense to the shipowner that the stevedore, rather than the shipowner, brought about the condition of unseaworthiness. (See Alaska S.S. Co. v. Petterson, 1954, 347 U.S. 396, 74 S. Ct. 601, 98 L.Ed. 798, affirming per curiam the decision of this court in Petterson v. Alaska S.S. Co., 9 Cir., 1953, 205 F.2d 478). That case involved defective equipment brought on board by the stevedore. But we can see no difference between such a case and the improper use by the stevedore of nondefective equipment, whether that of the ship or that of the stevedore. In either case there is a dangerous condition, and the shipowner is liable. The liability is absolute and nondelegable. See also Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Crumady v. The Joachim Hendrik Fisser, supra; Grillea v. United States, 2 Cir., 1956, 232 F.2d 919, and Robillard v. A. L. Burbank Co., supra.

This is not a case of "instant unseaworthiness," such as we referred to in Titus v. The Santorini, 9 Cir., 1958, 258 F.2d 352, 354, and Billeci v. United States, 9 Cir., 1962, 298 F.2d 703, 706. General language in those cases and others indicating that the shipowner is not liable for unseaworthiness brought about by action of the stevedore must be confined to the facts of the cases in which it is used. Thus, Blassingill might fail in this case if the only danger was brought about by himself or his fellow longshoremen in not properly placing bales in the particular slingload that injured him. The evidence, however, does not require a finding that that is what happened. Here, the jury could have found that there was adopted by the stevedore a course of conduct that made the ship dangerous. This, we think, is unseaworthiness. It was error to refuse the proffered instructions, and to give, without qualification, appellee's instruction quoted above.

Blassingill also attacks the court's refusal of an instruction relating to the condition of the burlap bales.[5] He cites Gutierrez v. Waterman S. S. Corp., supra and Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798. There was some evidence that many of the bales were irregular in shape, and that this may have been a contributing cause of the accident.

The court did tell the jury that the shipowner had a duty "to maintain the

4. In a case involving only a claim that defective equipment was supplied, this instruction would seem proper. Its effect in this case, however, is to exclude the claim that a defective method was used, and this is the heart of the issue presented, i.e., as stated in the complaint, the sling was overloaded. (See Ballwanz v. Isthmian Lines, Inc., supra)

5. "When the shipowner accepts cargo packaged or baled in a faulty manner or allows the package or bale to become faulty, he assumes the responsibility for injury that this may cause the seamen or their substitutes on or about the ship."

vessel and its appurtenances and its cargo in a reasonably safe condition and suitable for the purposes for which they are intended to be used," and that the shipowner does not, by hiring a competent stevedoring company, satisfy its duty "to furnish and maintain a seaworthy vessel including equipment and gear and cargo * * *." Thus the court did instruct upon this question, though not as fully as Blassingill wished. We would not reverse on this ground, even though we think that the court's instructions as to this question could well have been more specific. On a new trial, both parties can propose instructions, and the court can give such charge as it thinks, in the light of the evidence, sufficient to define this issue. There is no doubt in our minds that a dangerous condition of the cargo can, under the authorities cited, amount to unseaworthiness.

■ Blassingill's last claim of error is based upon the fact that, in his argument to the jury, counsel for appellee said:

"Now, there are certain key concepts that I think we should keep in mind; first, that this is a lawsuit by a longshoreman against the owner of a ship. I represent the Waterman Steamship company. It is not a compensation claim by this man against his employer, which is an entirely different thing and which is what I think he really has, rather than a lawsuit against Waterman."

Blassingill's counsel did not object, and did not ask for any instruction until the court had completed its charge to the jury. He then asked the court to tell the jury that "workmen's compensation has nothing to do with this case, and that the maritime law exclusively applies."

We think that this request came too late. The court could well have felt, as we do, that the statement in appellee's counsel's argument, in context, was harmless, and that it would unduly emphasize it to call the jury back.

There being no error relating to the negligence count, the verdict of the jury should stand, as to that count. See Gasoline Prods. Co. v. Champlin Co., 1931, 283 U.S. 494, 499, 51 S.Ct. 513, 75 L.Ed. 1188. The judgment is reversed and the matter is remanded for a new trial on the unseaworthiness count only.