Felix PINTO, Plaintiff,

v.

The VESSEL "SANTA ISABEL,"
Defendant.

PANAMA AGENCIES COMPANY,
Defendant-Third-Party Plaintiff,

v.

ASSOCIATED SHIPPING AGENTS,
LTD., Third-Party Defendant.

Civ. No. 77–0121–B.

United States District Court,
D. Canal Zone,
Balboa Division.

May 27, 1980.

David J. Kiyonaga, Balboa, Canal Zone, for plaintiff.

Woodrow DeCastro, Balboa, Panama, for Vessel & third-party defendant.

Roy Phillips, Phenix City, Ala., for Panama Agencies.

## OPINION AND ORDER

PITTMAN, Chief Judge.

Plaintiff Felix Pinto, an Ecuadorean national employee of the Panama Canal Company,[1] originally brought this admiralty suit in rem against the S/S SANTA ISABEL for injuries he allegedly sustained while working as a longshoreman aboard the vessel. The complaint alleged plaintiff's injuries were caused by unseaworthy conditions existing aboard the vessel or alternatively by the negligence of the master and crew of the vessel.

The complaint was amended to join as a defendant Panama Agencies Company (PAC). PAC is alleged to be jointly liable with the vessel for the alleged act of its employee who plaintiff claims was the direct cause of his injuries.

In its answer, PAC disclaimed any liability to the plaintiff and filed a Third-Party complaint against Associated Shipping Agents, Ltd. (ASA). PAC denies any employer-employee relationship between it and the employee who is alleged to be an employee of ASA.

The defendant vessel Santa Isabel has cross-claimed against PAC which in turn has counterclaimed against the vessel. The vessel does not contend that plaintiff violated any safety rules or was contributorily negligent.

All the claims are filed under the Admiralty and Maritime jurisdiction of this court. Jurisdiction is uncontested. The parties have consented that any damages issue herein shall be referred to a Special Master pursuant to *Fed.R.Civ.P.* 53.

## FINDINGS OF FACT

Plaintiff Felix Pinto is a 42-year old Ecuadorean national who sustained injuries while working as a Panama Canal Company stevedore aboard the SANTA ISABEL on or about September 7, 1976, in the former Panama Canal Zone.

The defendant SANTA ISABEL is a bulk carrier of United States registry owned by Prudential Lines, Inc.

The defendant and third-party plaintiff PAC is incorporated in the state of West Virginia and, at all times herein material, was licensed to do and was doing business in the former Panama Canal Zone as a steamship agency with offices located in the Canal Zone.

The third-party defendant ASA is incorporated in the Bahamas and at all times hereinafter mentioned was licensed to do and was doing business in the Canal Zone as a steamship agency with offices located in the former Canal Zone.

The plaintiff Felix Pinto alleges he sustained injuries aboard the S.S. SANTA ISABEL while working as a stevedore for the Panama Canal Company in the former Canal Zone. He also claims against the defendant Panama Agencies Company as an independent contractor cleaning up debris and dunnage in Hold No. 3 of the SANTA ISABEL in the tween deck directly above where the plaintiff was working as a Panama Canal stevedore. He contends the vessel and the independent contractors are each liable. PAC, defendant and third-party plaintiff, claims against ASA alleging the agent of the SANTA ISABEL was ASA. It is claimed ASA requested through PAC the services of riggers and that PAC contacted a bosun specializing in rigging services and sent him to ASA to get his instructions and perform the service. PAC further contends that the bosun normally obtains his own rigging team, boards the vessel, and oversees the performance of the required duties. PAC claims that neither the bosun nor the riggers were employees of PAC. PAC therefore claims judgment against ASA for all sums which may be adjudged against PAC in favor of plaintiff Pinto.

Defendant SANTA ISABEL cross-claims against PAC, claiming the riggers were employees of PAC and that PAC, as employer, owned a duty, pursuant to an implied warranty, to have its employees perform their work in a safe and workmanlike manner,

1. Now the Panama Canal Commission, See Pub.L.No. 96–70, § 3(b)(5), 93 Stat. 452.

which they failed to do. SANTA ISABEL prays for judgment against PAC for any sum that it may be adjudged liable to plaintiff Pinto including costs and attorneys' fees.

PAC, defendant and third-party plaintiff, in its counterclaim against the SANTA ISABEL claims the riggers were not employees of PAC, but, in any event, were lent or hired to ASA and SANTA ISABEL and were subject to the direction and control of ASA and SANTA ISABEL. The counterclaim seeks judgment against SANTA ISABEL in a sum it may be adjudged liable to plaintiff Pinto together with costs and attorneys' fees.

On the morning of September 7, 1976, at about 8:00 a. m., the plaintiff, as a member of a gang of Panama Canal Company stevedores boarded the SANTA ISABEL while she was docked at Pier 18, Balboa, Canal Zone. The plaintiff and his co-workers went aboard the vessel to discharge cargo in the vessel's holds. At the time he sustained his injuries, plaintiff was working in the number 3 hold of the vessel, storing bags of cocoa beans at the bottom of the hold.

At the same time plaintiff's longshore crew boarded the vessel, so did a clean-up crew. Sometime within the hour after plaintiff came aboard and began work in the number 3 hold, the clean-up crew, at the instruction of the ship's officer, started to work cleaning the top tween deck in the number 3 hold. They were working directly above the plaintiff's longshoring gang. Their clean-up work required them to remove from the top tween deck trash, dunnage and turnbuckles remaining after cargo had been discharged from the top tween deck. They accomplished this task by throwing the materials through a hole in the top tween deck to the bottom tween deck. One of these thrown metal turnbuckles, about two to two and one-half feet long and weighing about eight pounds, slid across the lower tween deck and fell to the bottom of the hold, injuring the plaintiff.

ASA acted as agents for the SANTA ISABEL and other Prudential Lines ships, a role which had previously been played by PAC. One of the conditions for ASA's obtaining the Prudential Lines agency was that ASA would continue to use PAC to obtain clean-up crews who would be familiar with Prudential Lines' vessels. To comply with this requirement of its agency contract, ASA ordered clean-up crews from PAC.

ASA would first determine the number of clean-up crew members it needed to service a particular ship. ASA would then inform PAC of its requirements. PAC in turn would send one C. Davis, a bosun also known as "Snowball," to report to ASA for instructions.[2] ASA would tell Brown how many men were needed and provide him with a pass for he and his crew to enter the pier. Davis selected his crew from among casual laborers and reported to the ship for instructions. Specific work instructions were given to Davis by the ship's officer, either directly or through one of ASA's employees. No orders were given to the clean-up crew by PAC, although they sometimes received instructions directly from the ship's officer.

After completion of a job, Davis reported the names of and hours worked of each by his crew members. PAC would pay the workers, then bill ASA for 133% of the amount paid. The additional 33% represented PAC's commission and also covered workman's compensation payments and PAC's administrative expenses.

The SANTA ISABEL directed the clean-up crew to perform clean-up operations on the top tween deck area of hold number 3. In doing so, it was aware that plaintiff's stevedoring crew was performing longshoring work at the bottom of hold number 3. The vessel was in direct violation of the following Occupational Safety and Health Administration regulations:

[29 C.F.R.] § 1918.91 Housekeeping.

\* \* \* \* \* \*

---

2. Davis' relationship with PAC is not completely clear to the court. It is clear that he was regarded by ASA as the foreman of the clean-up crew.

(b) Gear or equipment, when not in use, shall be removed from the immediate work areas, or shall be so placed as not to present a hazard.

* * * * * *

(d) Loose paper, dunnage and debris shall be collected as the work progresses and be kept clear of the immediate work area.

* * * * * *

§ 1918.95 Longshoring operations in the vicinity of repair and maintenance work.

* * * * * *

(b) Longshoring operations shall not be carried on in the hold or on deck beneath men working in the rigging overhead when such overhead work creates a hazard of falling objects.

Injury to the plaintiff was a reasonably foreseeable consequence of violating the above OSHA regulations.

The clean-up crew conducted its operations in an unreasonably careless manner.

## CONCLUSIONS OF LAW

### I.

■ The OSHA regulations referred to above were designed to protect longshoremen like the plaintiff against the type of risk which caused his injuries. Their violation by the vessel, which violation was a proximate cause of plaintiff's injuries, constitutes negligence per se, *Arthur v. Flota Mercante Gran Centro Americana, S. A.,* 487 F.2d 561, 564 (5th Cir. 1973), and rendered the vessel unseaworthy. *Lacaze v. Oldendorff,* 526 F.2d 1213, 1218–1220 (5th Cir. 1976). The unseaworthy conditions proximately caused plaintiff's injuries and cannot be characterized as mere momentary unseaworthiness. The debris, dunnage and turnbuckles had accumulated in the top tween deck before plaintiff came to work on the vessel. It may have been left over from unloading operations conducted at the vessel's last port of call. The "ship's duty

with respect to the condition, and the ship's opportunity to correct the default, extended over a considerable period of time . . ." *Mazzanti v. Lykes Bros. S. S. Co.,* 524 F.2d 961, 962 (5th Cir. 1975).[3]

With regard to this court's holding that plaintiff may recover on his unseaworthiness claim, the following explanation seems appropriate. The *Sieracki-Ryan* doctrine, *see infra,* was apparently exported to the Panama Canal Zone by the case of *Sandoval v. Mitsui Sempaku K. K. Tokyo,* 460 F.2d 1163 (5th Cir. 1972). The *Sandoval* court held that Panama Canal Company employees are beneficiaries of the warranty of seaworthiness owed by the vessel and its owner. 460 F.2d at 1166; *see Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The court further held that the shipowner was entitled to indemnity from the Panama Canal Company for violation of the latter's duty "to exercise reasonable care to avoid the foreseeable harm of the shipowner's liability to Sandoval." 460 F.2d at 1168; *see Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

■ The defendant SANTA ISABEL would have this court hold that the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) Amendments of 1972, Pub.L. 92–576, preclude any recovery for unseaworthiness. This legislation amended section 5 of the LHWCA, 33 U.S.C. § 905, by adding a new subsection (b) which overruled *Sieracki* and *Ryan* insofar as those covered by the LHWCA were concerned. *See* 33 U.S.C. § 905(b). *See also id.,* § 902(21). Nothing in the language of the statute, as the SANTA ISABEL concedes, indicates that the LHWCA as amended was intended to affect the rights and duties of persons not covered by the LHWCA. Panama Canal Company employees like the instant plaintiff are not covered by the LHWCA but by the Federal Employees'

---

**3.** See also *Griffin v. United States,* 469 F.2d 671 (9th Cir. 1972) (Unseaworthy condition causing no damage until brought into play by negligence of another is nevertheless unseaworthy condition).

Compensation Act (F.E.C.A.). Normally, when statutory language is clear, a court does not look to legislative history to determine its meaning. *United States v. Brown*, 555 F.2d 407 (5th Cir. 1977); *Dore v. Kleppe*, 522 F.2d 1369 (5th Cir. 1975). A conflict in the reported cases suggest that this court should fully explore the issue.

Some statements in *Edmonds v. Compagnie Generale Transatl.*, 443 U.S. 256, 261, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521, 528 (1979), led one lower court to conclude that the effect of the LHWCA Amendments upon the unseaworthiness remedy was "to abolish the entire class of *Sieracki*-seamen" regardless of whether they are covered under the LHWCA. *See Grice v. A/S J. Ludwig Mowinckels*, 477 F.Supp. 365, 370 (S.D.Ala. 1979). *Edmonds* carefully noted, 443 U.S. at 262 n. 11, 99 S.Ct. at 2757 n. 11, 61 L.Ed.2d at 528 n. 11:

> "The amendments also *increased compensation benefits*, expanded the Act's geographic coverage, and instituted a new means of adjudicating compensation cases." (Emphasis added.)

This indicates to this court that the Supreme Court was directing its attention to the LHWCA-covered employees and not to employees not covered by longshoreman benefits such as F.E.C.A. For that reason, the dictum suggested seems misplaced and overbroad. To the same effect as *Grice, supra,* is *Aparicio v. Swan Lake*, 479 F.Supp. 1088 (D.C.Z.1979). On the other hand, it has been stated that the amendments "had no direct effect on longshoremen . . . who are covered under the F.E.C.A." *United States Lines, Inc. v. United States*, 593 F.2d 570 (4th Cir. 1979). *See also Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980).

The legislative history of the 1972 Amendments strongly indicates that the drafters intended § 5(b) to apply only to persons covered by the LHWCA. For example, the House Report contains the following discussion of the proposal to eliminate the unseaworthiness remedy:

> "The Committee believes that where a *longshoreman or other worker covered under this Act* is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured.
>
> "The Committee also rejected the thesis that a vessel should be liable without regard to its fault for injuries sustained by *employees covered under this Act* while working on board the vessel.

> \* \* \* \* \* \*

> "Thus a vessel shall not be liable in damages for acts or omissions of *stevedores or employees of stevedores subject to this Act, Crumedy [Crumady] vs. The J. H. Fisser*, 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413], *Albanese vs. Matts [Maats]*, 382 U.S. 283 [86 S.Ct. 429, 15 L.Ed.2d 327], *Skibinski vs. Waterman SS Corp.*, [2 Cir.] 330 [360] F.2d 539; for the manner or method in which *stevedores or employees of stevedores subject to this Act* perform their work, *A. N. G. [A. & G.] Stevedores vs. Ellerman Lines*, 369 U.S. 355 [82 S.Ct. 780, 7 L.Ed.2d 798], *Blassingill vs. Waterman SS Corp.*, [9 Cir.] 336 F.2d 367; for gear or equipment of *stevedores or employees of stevedores subject to this Act* . . . ."

H.R.Rep. (Education and Labor Committee) No. 92–1441, 92d Cong., 2d Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4698, 4702–4703. (Emphasis added.) (Footnotes omitted.)

In the House Report's section-by-section analysis of the Bill, the following appears.

### "Section 18"

> "This section amends section 5, adding a new subsection (b) which provides that a person *covered by the Act* who is injured due to the negligence of a vessel may sue the vessel for damages. The employer, however, would not be liable, either directly or indirectly, for damages which the vessel was required to pay in such a lawsuit. The Act would declare void any indemnification action or contracts or warranties requiring payment

by the employer to the vessel of any damages which the vessel was required to pay to an employee in such a lawsuit. If the employee was employed by the vessel to provide stevedoring services and his injury was caused by the negligence of other persons providing stevedoring services to the vessel, action against the vessel would be barred. Similarly, if the employee were employed by the vessel to provide shipbuilding or repair services and his injury were caused by the negligence of other persons providing such services to the vessel, such an action against the vessel would be barred. Actions under this section cannot be based on the doctrine of seaworthiness and actions provided for in this section would be the exclusive remedy against a vessel. Vessel would be defined as any vessel upon which or in connection with which *any person entitled to benefits* suffers injury and including the vessel owner and others responsible for the operation of the vessel."

*Id.*, [1972] U.S.Code Cong. & Admin.News, p. 4719. (Emphasis added.)

The Senate Report reflects an identical understanding of the effect of the legislation:

"The Committee believes that where *a longshoreman or other worker covered under this Act* is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured.

"The Committee also rejected the thesis that a vessel should be liable without regard to its fault for injuries sustained by *employees covered under this Act* while working on board the vessel."

S.Rep. (Committee on Labor and Public Welfare) No. 92–1125, 92d Cong., 2d Sess. (1972), p. 8 (emphasis added).

The following appears at page 10 of the Senate Report:

"*Persons to whom compensation is payable under the Act* retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness. Thus a vessel shall not be liable in damages for acts or omissions of *stevedores or employees of stevedores subject to this Act. Crumedy [Crumady] vs. The J. H. Fisser*, 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413], *Albanese vs. Matts [Maats]*, 382 U.S. 283 [86 S.Ct. 429, 15 L.Ed.2d 327], *Skibinski vs. Waterman SS Corp.*, [2 Cir.] 360 F.2d 539; for the manner or method in which *stevedores or employees of stevedores subject to this Act* perform their work, *A. N. G. [A. & G.] Stevedores vs. Ellerman Lines*, 369 U.S. 355 [82 S.Ct. 780, 7 L.Ed.2d 798], *Blassingill vs. Waterman SS Corp.*, [9 Cir.] 336 F.2d 367; for gear or equipment of *stevedores or employees of stevedores subject to this Act* whether used aboard ship, or ashore, *Alaska SS Co. vs. Peterson [Petterson]*, 347 U.S. 396 [74 S.Ct. 601, 98 L.Ed. 798], *Italia Societa vs. Oregon Stevedoring Co.*, 376 U.S. 315 [84 S.Ct. 748, 11 L.Ed.2d 732], or for other categories of unseaworthiness which have been judicially established   .   .   . ." (Emphasis added.)

At page 25 of the Senate Report under the section-by-section analysis, the following is written:

"Section 18 amends section 5, adding a new subsection (b) which provides that *a person covered by the Act* who is injured due to the negligence of a vessel may sue the vessel for damages. The employer, however, would not be liable, either directly or indirectly, for damages which the vessel was required to pay in such a lawsuit. The Act would declare void any indemnification action or contracts or warranties requiring payment by the employer to the vessel of any damages which the vessel was required to pay to an employee in such a lawsuit. If the employee was employed by the vessel to provide stevedoring services and his injury was caused by the negligence of other persons providing stevedoring services to

the vessel, action against the vessel would be barred. Similarly, if the employee were employed by the vessel to provide shipbuilding or repair services and his injury were caused by the negligence of other persons providing such services to the vessel, such an action against the vessel would be barred. Actions under this section can not be based on the doctrine of seaworthiness and actions provided for in this section would be the exclusive remedy against a vessel. Vessel would be defined as any vessel upon which or in connection with which *any person entitled to benefits* suffers injury and including the vessel owner and others responsible for the operation of the vessel." (Emphasis added.)

Nowhere in the House and Senate Reports or in the Amendments is there any indication the legislation was intended to affect the rights and duties of persons not covered by the LHWCA. The remarks of Representatives Steiger and Quie (both members of the Education and Labor Committee) during the House debate of the Bill indicate that they had this same understanding. *See Cong.Record,* Oct. 14, 1972 H.10044, H.10046. It is true that Representative Eckhardt used more expansive language in the debates. *See id.,* H.10041–10042. But he was not a member of the Committee which considered the Bill. In addition, it is apparent from his remarks that he both opposed the legislation and misunderstood some of its provisions, notably its effect upon the longshoreman's negligence remedy (which he stated would be "wiped out" by the Bill). *See id.* His remarks are thus "entitled to little weight" in determining the Congressional intent. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 204, 96 S.Ct. 1375, 1386, 47 L.Ed.2d 668, 683, n.24 (1976).

In sum, this court's analysis of the LHWCA Amendments and their legislative history indicates they were intended to have no effect upon the judicially created unseaworthiness remedy of longshoremen like the plaintiff who are not covered under the LHWCA. Statutes which change the

common law or the general maritime law are to be strictly construed. *See Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294, 1299 (1952). *United States v. Mead,* 426 F.2d 118 (9th Cir. 1970).

I agree with the court's expression in *Guevara v. CIA Sud Americana,* 1978 A.M.C. 2000, 2004 (D.C.Z.1978),

"In 1972, Congress in amending the L.H.W.A. legislatively overruled the *Ryan-Sieracki* Doctrine. However, it is important to note that in so doing, Congress saw fit to increase the benefits conferred upon longshoremen by the L.H.W.A."

In *Aparicio v. Swan Lake, supra,* the legislative history was cited:

" 'The Committee heard testimony that the number of . . . actions . . under the *Sieracki* and *Ryan* line of decisions has increased substantially . . much of the financial resources which could better be utilized to pay improved compensation benefits were now being spent to defray litigation costs.

\*    \*    \*    \*    \*    \*

" 'The Committee believes that especially with the vast improvement in compensation benefits which the bill would provide, there is no compelling reason to continue to require vessels to assume what amounts to absolute liability for injuries which occur to longshoremen or other workers covered under the Act who are injured while working on those vessels.

\*    \*    \*    \*    \*    \*

" 'Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness.' "

479 F.Supp. at 1091 (quoting H.R.Rep. (Education and Labor Committee) No. 92–1441, 92d Cong., 2d Sess. (1972), *reprinted in*

[1972] U.S.Code Cong. & Admin.News, pp. 4698, 4702–03).

It appears to this court that the failure to increase F.E.C.A. benefits indicated either an oversight both as to the failure to increase benefits and to include F.E.C.A. covered employees in the Act or an intentional omission of the F.E.C.A. covered employees.

■ This court accordingly holds that plaintiff Pinto may recover on his unseaworthiness claim.

## II.

The Fifth Circuit has held that " 'the issue of whether a relationship of borrowed servant existed is a matter of law.' " *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357 (5th Cir. 1977), citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 314 (5th Cir. 1969). Although consideration of a number of factors[4] may enter the determination, "[w]ithin the context of *respondeat superior* the focus on control in the traditional test of borrowed employee status is proper, because only if the employee acted under the orders of his employer should injuries to third parties be traced to the original negligence of the employer." *Gaudet v. Exxon Corp., supra,* 562 F.2d at 356.

■ Applying this test, the court finds the clean-up crew were the borrowed servants of the SANTA ISABEL. Although PAC paid the crew members, presumably could discharge them, and its employee Davis was their foreman, the vessel had the power to direct their work activities. This power extended beyond making suggestions. *See Ruiz v. Shell Oil Co., supra* note 4. Moreover, it was the vessel's work which

was being performed by the crew and the place of performance of the work was the vessel itself. *See id.* Finally, it is especially appropriate to hold that the clean-up crew were borrowed employees of the vessel since the injury to plaintiff Pinto can be directly traced to the original negligence of the vessel. *See Gaudet v. Exxon Corp., supra,* 562 F.2d 356. The vessel directed the clean-up crew to work in the top tween deck of hold number 3 while the plaintiff worked below.

The evidence is that ASA exercised minimal control over the activities of the clean-up crew. Its duties consisted merely of relaying instructions from the ship's officers.

The negligence and unseaworthiness of the SANTA ISABEL having proximately caused plaintiff's injuries, the SANTA ISABEL must respond in damages.

Accordingly, a judgment will be entered (1) in favor of plaintiff Felix Pinto and against the defendant SANTA ISABEL for Pinto's injuries; (2) against the plaintiff and in favor of defendant Panama Agencies Company; (3) in favor of defendant Panama Agencies Company and against the defendant SANTA ISABEL on the cross-claim of the SANTA ISABEL; and (4) dismissing with prejudice the moot counterclaim of defendant Panama Agencies Company against the defendant SANTA ISABEL and the moot third-party complaint of defendant Panama Agencies Company against the third-party defendant Associated Shipping Agencies, Ltd.

In accordance with this court's Order of March 14, 1980, Magistrate Ray J.

---

4. In *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), the court stated:

"In *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir. 1969), this court mentioned nine factors to be evaluated in determining whether an employee is to be considered a borrowed employee of another:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?"

McQuary, as Special Master, is directed to try the damages of the plaintiff against the defendant SANTA ISABEL.