Glenn E. FREEBORN and Wonieta Freeborn, Plaintiffs,

v.

UPPER LAKES SHIPPING, LTD., a foreign corporation, Defendant and Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

No. M81–57 CA.

United States District Court, W. D. Michigan, N. D.

May 24, 1982.

Thomas G. Moher, Sault Ste. Marie, Mich., for plaintiffs.

Paul D. Galea, Detroit, Mich., for defendant and third-party plaintiff.

Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., for third-party defendant.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

Plaintiffs, Glenn and Wonieta Freeborn, brought suit against defendant, Upper Lakes Shipping, Ltd. (hereinafter "Upper Lakes"), for injuries suffered by Mr. Freeborn while he was working at the Soo Locks. Mr. Freeborn (hereinafter "plaintiff") was employed by the United States Army Corp of Engineers and was assisting one of defendant's ships through the Locks on December 12, 1979, when the incident occurred.

On May 15, 1981, Upper Lakes filed a third-party complaint against the United States as third party defendant. Upper Lakes alleges that the United States failed to provide plaintiff a safe place to work and since the government controlled the working conditions, it is wholly liable for plaintiff's injuries. Defendant seeks contribution and indemnity for any amounts they may be required to pay plaintiff. The Government insists it is not liable for such amounts because plaintiff has recovered under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.* The United States argues that FECA contains an exclusive remedy clause that bars recovery by Upper Lakes on indemnity or contribution theories, and on that ground, the Government has moved for summary judgment.

## DISCUSSION

Plaintiff was injured in the course of his employment for the United States while aiding in assisting the vessel James A. Norris through the Soo Locks. He was handling the bow line as the ship was in the lock and alleges that the following sequence of events took place:

"The winch operator (on the defendant's ship) negligently, carelessly, and in gross negligence operated the forward winch of the James A. Norris in such a manner that the cable was pulled back to the ship very rapidly and there was another crew member walking down the deck of said ship and the Plaintiff was not able to let go of the cable as it would endanger the life of the crew member walking down the deck of said ship. The winch operator continued to rapidly pull the cable and the Plaintiff Glenn Freeborn finally had to release the cable and at the time he released the cable he struck a patch of ice and broke his left leg."

Plaintiff recovered $7,992.89 from the Government under FECA. He then brought suit against the ship owner, Upper Lakes, claiming that its negligent operation of the line winch caused him to fall and injure himself. Upper Lakes contends that the United States is liable over to it because it failed to maintain safe working conditions for plaintiff.

Defendant Upper Lakes contends that the government's indemnity obligation arises out of the government's employment contract with plaintiff and his co-workers. It is argued that Upper Lakes should be treated as a third-party beneficiary of that contract, which places upon the workers an obligation to deliver workmanlike performance and contains the workmen's implied warranty that they will deliver such performance: "[i]f the third party defendant and its employees had performed the work in a workmanlike fashion, there would have

been no ice or other treacherous conditions which led to the plaintiff's alleged injuries." Apparently, Upper Lakes is arguing that the government, through its employment contract with the workers, impliedly warrants that those workers will perform "in a workmanlike fashion" and if such performance is not forthcoming from the workers, the government is liable to anyone injured by the breach of that warranty.

As a second basis for its entitlement to indemnity from the government, Upper Lakes asserts that the government's duties in operating the locks include an obligation to handle ships passing through the locks with "reasonable safety and thus, to save the shipowners harmless." This argument is based on *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), where the Court held that the exclusive remedy provision of the Longshoremen's and Harbor Worker's Compensation Act (hereinafter "LH WCA")[1] did not bar a shipowner from a claim for indemnity against the contracting stevedoring company. In *Ryan*, a worker was injured when a large roll of paper struck him during the unloading of a ship's cargo. The worker recovered from the shipowner, who then sued the contractor who had negligently loaded the rolls. The Court found that the LHWCA did not preclude assertion by the shipowner of the contractor's contractual liability to it. The Court reasoned that "[w]hile the Compensation Act protects a stevedoring contractor from actions brought against it by its employee on account of the contractor's tortious conduct causing injury to the employee, the contractor has no logical ground for relief from the full consequences of its independent contractual obligation, voluntarily assumed to the shipowner, to load the cargo properly." *Ryan, supra* at 131, 76 S.Ct. at 236.

In short, Upper Lakes asserts that since the government's negligence was the sole cause of the accident, any recovery that plaintiff may win from Upper Lakes should be paid by the government.

Finally, Upper Lakes argues that factual issues exist concerning the nature of implied and possibly expressed promises made by and between the parties to this action, and that the existence of these issues precludes the award of summary judgment to the United States.

To prevail on a motion for summary judgment, the moving party must show that there exist no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In deciding this motion, the court will first examine the question whether the exclusive remedy provisions of either FECA or LHWCA bar this suit by Upper Lakes for indemnification against the government. If this question is answered in the affirmative, then the existence of unresolved factual issues may be immaterial.

It is initially noted that any liability of the United States must be based on some form of consent by the government to be sued. *See,* 28 U.S.C. § 2674. The principal source of such consent is, of course, the Federal Tort Claims Act, 28 U.S.C. § 2761, *et seq.* (FTCA). However, FTCA by its terms does not extend to "[a]ny claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d). The Suits in Admiralty Act, 46 U.S.C. § 741, *et seq.*, is another source of the government's consent to be sued, and since this action arises within the admiralty branch of this court, we look to admiralty law to determine the rights and liabilities of the parties. *See, Roberts v. United States,* 498 F.2d 520 (9th Cir. 1974); Annot. at 19 A.L.R.Fed. 297.[2]

---

1. 33 U.S.C. § 901, *et seq.* The Act provides, at section 905(a), that:
    "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of the employer to the employee, his legal representative ... and anyone otherwise entitled to recover

damages from such employer at law or in admiralty on account of such injury or death...."

2. Upper Lakes specifically, and properly, invoked the admiralty jurisdiction of this court. *See, Executive Jet Aviation, Inc. v. City of*

■ According to the Suits in Admiralty Act, *supra*, a suit may be maintained against the United States only "[i]n cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained. . . ." 46 U.S.C. § 742. Thus, an action for indemnity against the United States is cognizable only if it would be recognized where the party against whom indemnity is sought is a private party.

■ If the party against whom indemnity is sought in this case were a private employer, instead of the United States, his liability for indemnification would be determined under the terms of LHWCA, rather than FECA.[3] Contained within LHWCA is an exclusive remedy section virtually identical to that set forth in FECA. Section 905(b) of U.S.C. Chapter 33 provides, in pertinent part, that:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void."

Without doubt, this statute bars indemnity actions by shipowners against employers of longshoremen. As the Supreme Court said in *Edmonds v. Compagnie Generale Transatl.*, 443 U.S. 256, 262, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1978), the purpose of

this statute was to "eliminate the shipowner's liability to the longshoreman for unseaworthiness and the stevedore's liability to the shipowner for unworkmanlike service resulting in injury to the longshoreman.[4] In *Edmonds*, the Court discussed loss-allocating mechanisms and noted that:

"The liability of the ship to the longshoreman is determined by a combination of judge-made and statutory law and, in the present context, depends on a showing of negligence or some other culpability. The longshoreman-victim, however, and his stevedore-employer—also a tortfeasor in this case—are participants in a workers' compensation scheme that affords benefits to the longshoreman regardless of the employer's fault and provides that the stevedore's only liability for the longshoreman's injury is to the longshoreman in the amount specified in the statute."

*Supra* at 261, 99 S.Ct. at 2756.

Thus, under the circumstances of this case and LHWCA, the longshoreman may sue the vessel as a third party, but his employer, the stevedore, is not to be liable directly or indirectly for any damages that may be recovered. 443 U.S. at 263, 99 S.Ct. at 2757.

A similar result was reached in the case of *United States Lines, Inc. v. United States*, 593 F.2d 570 (4th Cir. 1979), where the court held that the United States, as the stevedore employer of a federal civil service longshoreman, was not subject to suit under the Suits in Admiralty Act for breach of its warranty of workmanlike performance to a private vessel. The court noted that by

---

*Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); *Interlake S.S. Co. v. Nielsen*, 338 F.2d 879 (6th Cir. 1964). *Cf. Wiper v. Great Lakes Engineering Works*, 340 F.2d 727 (6th Cir. 1965).

3. The Court's decision is based on the premise that if plaintiff were employed by a private employer, he would be covered by LHWCA. Section 902(3) of the statute defines "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and

any harborworker. . . ." Plaintiff was employed as a "lock and dam operator" and his primary duties were to assist ships passing through the locks. *See, P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Fusco v. Perini North River Associates*, 622 F.2d 1111 (2d Cir. 1980); *Aparicio v. Swan Lake*, 479 F.Supp. 1088 (D.C. Canal Zone 1979).

4. The Supreme Court has flatly stated that when Congress enacted section 905(b) in 1972, it "acted . . . to overrule . . . *Ryan*." 443 U.S. at 262, 99 S.Ct. at 2757.

enacting section 905(b) of Title 33, Congress abolished the doctrine of unseaworthiness as a basis for liability against the shipowner in favor of the longshoreman, thereby restricting the longshoreman's claim against the shipowner to one for negligence. Congress also outlawed the employer's liability to the shipowner, whether claimed under warranty or otherwise.[5] The court's discussion of section 905(b) concluded with the following remarks:

> "[Section 905(b)], relating only to workers covered under [LHWCA], had no direct effect on longshoremen like [plaintiff] who are covered under the F.E.C.A. The indirect effect, however, was to cut off the indemnity action between the shipowner and the United States. Since a shipowner can no longer sue a private stevedore for indemnity, it cannot, under the terms of the Suits in Admiralty Act, recover from the United States, for the government is subject to suits only in those instances in which a private individual would be so subject. 46 U.S.C. § 742 (1970)."

593 F.2d at 572.

This analysis of the law compels the conclusion that Upper Lakes cannot recover indemnity from the United States under any theory.[6] Therefore, the government's motion for summary judgment is granted.[7]

---

**5.** *See* note 4, *supra.*

**6.** The parties devoted most of their energies in arguing this motion to the issue whether the exclusive remedy of FECA barred indemnity against the United States. Since this case is within the admiralty jurisdiction of the court, the FECA remedy is of little consequence. The court notes, however, that FECA, unlike LHWCA, does not concern itself with the relationship between parties who may be liable for the same tort. *See, Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 601, 83 S.Ct. 926, 928, 10 L.Ed.2d 1 (1963), where the Court noted that "there is no evidence whatever that Congress was concerned with the rights of unrelated third parties" when it passed FECA. Therefore, the effect of FECA on the government's liability in this case is not an issue before the court and will not be decided.

**7.** Since it is clear from the uncontroverted facts of this case that federal law precludes a suit for indemnity by Upper Lakes against the government, the court need not be concerned with any unresolved factual matters. Any such issues would be immaterial to the determination of which law applies in this case.