Milton M. ROSS, Libellant,

v.

THE Steamship ZEELAND, her engines, etc., and NV Koninklijke Rotterdamsche Lloyd, her owners, of Rotterdam, Holland, Respondents.

No. 7715.

United States District Court
E. D. Virginia, Norfolk Division.

April 30, 1956.

Sidney H. Kelsey, Norfolk, Va., for libellant.

Seawell, Johnston, McCoy & Winston, Leon T. Seawell, Jr. and Harry E. McCoy, Jr., Norfolk, Va., for respondents.

HOFFMAN, District Judge.

Libellant, a man 67 years of age at the time of his accident, was injured aboard the S/S Zeeland while employed by Tidewater Port Service as a watchman with the vessel in the port of Hampton Roads. On March 23, 1954, libellant reported for duty at 3 P.M., while stevedores were unloading the No. 1 hold which contained boxes of rubber. During that afternoon and evening, libellant had occasion to go down the after ladder of the No. 1 hold approximately six times. He observed a pile of wire cable about four feet in height located in the vicinity of the forward ladder of the No. 1 hold, but contends that he did not realize this wire or cable was located as close to the forward ladder as later developed. During unloading operations by the stevedores, a cluster of lights in the hold provided adequate lighting facilities. These lights were removed at midnight when the stevedores ceased work. There remained, however, a mast light which

generally lighted the entire area other than the 'tween deck.

Shortly after midnight the Chief Officer told libellant to enter the No. 1 hold and examine same for any lighted cigarettes or persons in the hold. As respondents introduced no evidence, we must examine libellant's testimony with respect to orders received. On discovery proceedings, libellant apparently stated that the Chief Officer told him to either enter the hold or stay near the hold on the main deck in order to prevent anyone from entering same. When cross-examined at the time of trial, the foregoing statement is somewhat modified as, according to libellant, he was instructed to first enter the hold and, after making his examination, he was at liberty to remain in the hold or return to the main deck and stay in the vicinity of the open hatch. Libellant further insisted that he had called the Chief Officer's attention to the removal of the cluster lights and inquired as to the safety of entering the hold, but was assured that it was safe and was further told not to hurry in the performance of his duties.

Under these circumstances libellant entered the No. 1 hold by descending the forward ladder leading from the main to 'tween decks. Approximately 4 to 6 feet from the bottom of the ladder, libellant tripped over the pile of wire or cable thereby sustaining his injury. He concedes that the wire had not been moved since it had been observed by him on his earlier trips into the hold but, in explanation, he states that it was difficult to estimate the precise location of the wire on his prior trips which were in the after end of the hold. He states that it was dark in the 'tween deck area, which was known to him before he entered the hold, and no flashlight was used or requested by libellant. There was no conversation with the Chief Officer as to the existence or location of the wire or cable on the 'tween deck, and no evidence that this Officer knew of same when he requested libellant to enter the hold.

The contributory negligence on the part of libellant is obvious. His carelessness in the face of known facts would seem to obviate the necessity of further discussion on this point. Entering a hold in the night hours with no available light and with knowledge that stevedores had not completed unloading operations, coupled with knowledge of the approximate location of a pile of loose wire or cable in the vicinity of the forward ladder, makes the Chief Officer's assurance of safety a meaningless statement. Disagreeing with libellant's contention that, under the facts of this case, contributory negligence does not operate in mitigation of damages because of the existence of an unseaworthy condition of the vessel, the Court holds that the contributory negligence of libellant was a major factor attributable to the accident and thereby will reduce the gross award by sixty (60) per cent. Confusion apparently exists in the mind of counsel with respect to the applicability of contributory negligence as contrasted with assumption of risk. As to the latter, it is quite clear that, with possibly certain exceptions, the assumption of risk doctrine is no longer a defense. It is equally clear that contributory negligence may mitigate the damages in a case involving an unseaworthy condition. Dixon v. United States, 2 Cir., 219 F.2d 10, an opinion by Circuit Judge Harlan, now a Justice of the Supreme Court. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, and The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, are not to the contrary as the issue of contributory negligence was not considered and the discussion in these cases is grounded upon assumption of risk.

The duty to provide a reasonably safe place to work for those employed aboard the vessel has been extended to stevedores, longshoremen, and repairmen of an independent contractor. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. The duty applies as to the

vessel in port as well as at sea. Beadle v. Spencer, 298 U.S. 124, 129, at page 131, 56 S.Ct. 712, at page 715, 80 L.Ed. 1082, where it is also said:

"Contributory negligence is not a defense to a suit brought either under the Jones Act or under the maritime law for injuries attributable to negligently defective equipment. *Under both it is ground only for apportionment of the damage*".

█ This is not a case in which the libellant had no choice other than to expose himself to the hazard created by the employer. In Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265, it is stated that an unreasonable choice would give rise to the defense of contributory negligence with resulting mitigation of damages. If a seaman has no free choice of a safe place to work, it is understandable that neither assumption of risk nor contributory negligence could be successfully interposed. In the case at bar, however, there is ample evidence to the effect that libellant breached a duty imposed upon him, i. e., a duty to take cognizance of existing conditions known to him and perhaps unknown to the Chief Officer.

There is no merit to libellant's contention that the Chief Officer issued a negligent order which libellant was required to obey. As previously noted, there is no evidence that he knew of the existence of the loose cable on the 'tween deck. To extend this doctrine would make the vessel an absolute insurer for the safety of anyone working aboard the ship as, in the majority of cases, seamen and others similarly situated generally act in response to implied or express orders.

█ While the issue of unseaworthiness is not free from doubt, the evidence is sufficient to sustain libellant's position. The loose wire or cable was apparently not permanently affixed to the 'tween deck and there is no explanation for its presence. Presumably it was in use by the stevedores in unloading the vessel. No reason is advanced as to why it was not removed to a corner of the 'tween deck where it would not constitute an obstruction to one lawfully thereon. Ship's officers requesting watchmen to inspect inadequately lighted holds must anticipate that the usual spaces afforded for such inspection are reasonably safe places in which to work. In this respect the vessel was unseaworthy.

The damages are, in any event, of little consequence. Libellant followed the sea until 1948 and, with the exception of perhaps two trips in 1951 and 1952, he has done little work of a compensatory nature. No issue of maintenance and cure is presented. He had worked for Tidewater Port Service at varying intervals for the three years prior to his injury. His average earnings as an employee of Tidewater were approximated at $10 per week. He worked for no one other than Tidewater during a period of 2½ years prior to the accident. While his earnings as an Engineer during that time he followed the sea were $400 per month and the medical testimony indicated that his services as such would be adversely affected, there is no showing that he could renew his duties as an engineer, and no suggestion that he intended to do so. Libellant was seen by a physician on three occasions, the last being eight days after the accident. At the most, libellant sustained a ruptured vein of the left knee with some moderate swelling at the time of the accident, and with some resultant tenderness which has been diagnosed as a soft tissue. An arthritic condition existed at the time of the accident, all of which was deemed average for a man of that age.

█ Taking into consideration a reasonable loss of compensation, the nature and extent of the injuries including the pain and suffering, it is the opinion of the Court that libellant, if free of contributory negligence, would be entitled to a gross award of $1,000. Mitigating the damages by the proportion attributed to libellant's own negligence, counsel for libellant will prepare a decree permitting a recovery in the sum of $400, plus taxable costs.