Milton M. ROSS, Appellant and Cross-Appellee,

v.

STEAMSHIP ZEELAND, her engines, etc. and NV Koninklijke Rotterdamsche Lloyd, her owners, of Rotterdam, Holland, Appellees and Cross-Appellants.

No. 7314.

United States Court of Appeals Fourth Circuit.

Argued Nov. 30, 1956.

Decided Jan. 7, 1957.

Sidney H. Kelsey, Norfolk, Va., for appellant and cross-appellee.

Thomas M. Johnston, Norfolk, Va. (Harry E. McCoy, and Seawell, Johnston, McCoy & Winston, Norfolk, Va., on brief) for appellees and cross-appellants.

Before SOPER and SOBELOFF, Circuit Judges, and THOMSEN, District Judge.

## THOMSEN, District Judge.

Libellant was injured when he tripped over some wire or cable piled on the 'tween deck in a hold of the SS Zeeland, on which he was serving as a night watchman. The district judge found that the pile of wire rendered the vessel unseaworthy, that libellant's own negligence contributed to the injury to the extent of 60%, and that libellant, if free of contributory negligence, would have been entitled to an award of $1,000; mitigating the damages by the proportion he attributed to libellant's own negligence, he entered judgment for $400, plus taxable costs. Both sides have appealed.

The facts with respect to the accident are fairly stated in the opinion of the district judge, 143 F.Supp. 656, and may be quoted from that opinion in condensed form. "Libellant * * * was * * * employed by Tidewater Port Service as a watchman" aboard the SS Zeeland "in the port of Hampton Roads. On March 23, 1954, libellant reported for duty at 3 P.M., while stevedores were unloading the No. 1 hold which contained boxes of rubber. During that afternoon and evening, libellant had occasion to go down the after ladder of the No. 1 hold approximately six times. He observed a pile of wire cable about four feet in height located in the vicinity of the forward ladder of the No. 1 hold, but contends that he did not realize this wire or cable was located as close to the forward ladder as later developed. During unloading operations by the stevedores, a cluster of lights in the hold provided adequate lighting facilities. These lights were removed at midnight when the stevedores ceased work. There remained, however, a mast light which generally lighted the entire area other than the 'tween deck. Shortly after midnight the Chief Officer told libellant to enter the No. 1 hold * * *; * * * libellant entered the * * * hold by descending the forward ladder leading from the main to 'tween decks. Approximately 4 to 6 feet from the bottom of the ladder, libellant tripped over the pile of wire or cable * * *. He concedes that the wire had not been moved since it had been observed by him on his earlier trips into the hold but * * * states that it was difficult to estimate the precise location of the wire on his prior trips * * *. He states that it was dark in the 'tween deck area, which was known to him before he entered the hold; * * * no flashlight was used or requested by libellant. There was no conversation with the Chief Officer as to the existence or location of the wire or cable on the 'tween deck, and no evidence that this Officer knew of same when he requested libellant to en-

ter the hold. \* \* \* The loose wire or cable was apparently not permanently affixed to the 'tween deck and there is no explanation for its presence. Presumably it was in use by the stevedores in unloading the vessel. No reason is advanced as to why it was not removed to a corner of the 'tween deck where it would not constitute an obstruction to one lawfully thereon. \* \* \* "

■ We agree with the district judge that "while the issue of unseaworthiness is not free from doubt, the evidence is sufficient to sustain libellant's position." A vessel and her owner are liable to indemnify a seaman for an injury caused by the unseaworthiness of the vessel or a failure to supply and keep in order the proper appliances appurtenant to the ship. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. This obligation of the shipowner has been extended to benefit longshoremen and carpenters who are injured in the course of their employment while aboard the ship, even though they were employed by independent contractors. Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. The owner's absolute duty to provide a seaworthy vessel, with appurtenant appliances and equipment, is not affected by relinquishment of control to another. Alaska Steamship Co., Inc., v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirming Petterson v. Alaska S.S. Co., 9 Cir., 205 F.2d 478; Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120, reversing Rogers v. United States Lines, 3 Cir., 205 F.2d 57. Those cases hold that the owner is liable for defects in equipment brought aboard by a stevedore and used under the stevedore's sole control. The doctrine of seaworthiness has also been extended to include improper stowage of cargo, causing personal injuries. Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, 279; The State of Maryland, 4 Cir., 85 F.2d 944, 947, and cases cited. Cf. Berti v. Compagnie De Nav. Cyprien Fabre, 2 Cir., 213 F.2d 397.

■ But the ship and her owners are not insurers of the safety of men working on board. Jones v. Gould Steamships & Industrials, Ltd., D.C.D. Md., 300 F. 109, affirmed 4 Cir., 10 F.2d 792. A vessel does not need to be free from all cause for mishap; it is enough if she is reasonably fit. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; Poignant v. U. S., 2 Cir., 225 F.2d 595; Doucette v. Vincent, 1 Cir., 194 F.2d 834. The seaworthiness of a ship, her equipment and appurtenance is a relative concept, dependent in each instance upon the circumstances in which her fitness is drawn in question. The crucial consideration is whether the ship was, in all respects pertinent to the injury, reasonably fit to permit libellant to perform his task aboard the ship with reasonable safety. Lester v. U. S., 2 Cir., 234 F.2d 625, 628. The doctrine of unseaworthiness does not extend so far as to require the owner to keep appliances which are inherently sound and seaworthy absolutely free at all times from transitory unsafe conditions resulting from their use. Cookingham v. U. S., 3 Cir., 184 F.2d 213; Hanrahan v. Pacific Transport Co., 2 Cir., 262 F. 951, certiorari denied 252 U.S. 579, 40 S.Ct. 345, 64 L.Ed. 726; Adamowski v. Gulf Oil Corp., D.C.E.D. Pa., 93 F.Supp. 115, affirmed 3 Cir., 197 F.2d 523; Shannon v. Union Barge Line Corp., 3 Cir., 194 F.2d 584, certiorari denied 344 U.S. 846, 73 S.Ct. 62, 97 L.Ed. 658; Daniels v. Pacific-Atlantic S.S. Co., D.C.E.D.N.Y., 120 F.Supp. 96; Garrison v. U. S., D.C.N.D.Cal., 121 F.Supp. 617; McMahan v. The Panamolga, D.C. D.Md., 127 F.Supp. 659.

■ The coil of wire in the case at bar was not a transitory condition within the meaning of the cases cited. It had been lying near the ladder for eight or nine hours at least, with no apparent reason for its being there. That fact, coupled with the lack of adequate lighting in the 'tween deck, rendered the ship

unseaworthy. It was not reasonably fit to permit libellant to perform his task with reasonable safety. Farrell Lines, Inc. v. Devlin, Md., 127 A.2d 640; Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784; Gindville v. American-Hawaiian S.S. Co., 3 Cir., 224 F.2d 746; Lahde v. Soc. Armadora Del Norte, 9 Cir., 220 F.2d 357; Poignant v. U. S., 2 Cir., 225 F.2d 595.

This conclusion makes it unnecessary to pass on the various questions arising out of libellant's charge of negligence on the part of respondents.

■ We also agree with the district judge that "contributory negligence on the part of libellant is obvious," and that such contributory negligence must mitigate the damages in this case. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Dixon v. U. S., 2 Cir., 219 F.2d 10. The conclusion of the district judge that 60% of the blame should be apportioned to libellant was not unreasonable.

■ We cannot agree, however, that the award is sufficient in amount. Since libellant was sixty-seven years old at the time of the accident, the district judge did not err in giving little weight to libellant's earnings as an engineer while he was following the sea several years ago, and in considering primarily his average weekly earnings during the three years before the accident. But the evidence shows a greater injury than that described by the district judge when he said: "The damages are * * * of little consequence. * * * At the most libellant sustained a ruptured vein of the left knee with some moderate swelling at the time of the accident, and with some resultant tenderness which has been diagnosed as a soft tissue."

Dr. Proffitt, the employer's doctor, saw libellant three times during the eight days following the accident; he took an x-ray, which showed some hypertrophic arthritis in the pelvis and left hip, but none in the knee. He has not seen libellant since March 31, 1954, eight days after the accident; he testified that there was nothing he could do medically for him at that time.

The evidence of Dr. Duncan, an orthopedic surgeon, which is not disputed, shows that on May 14, 1954, when he first saw libellant, there was a palpable, small, soft tissue mass over the anterior and lateral aspect of the left knee, probably due to a ruptured vien; libellant then had a stiffness in his left knee due to an arthritis, which was traumatic in origin, and which the doctor felt would be slow to improve in a man of sixty-seven. The doctor did not think libellant was able to climb a ship's ladder at that time. On July 21, 1955, Dr. Duncan saw libellant again; there was no swelling or deformity of the knee, but there was some crepitation present; the doctor still thought the claimant had some traumatic arthritis in his left knee and, in view of his age, did not think it would show any further improvement. It was primarily a soft tissue affair, not anything marked, but the doctor did not believe the knee would ever be good enough to allow libellant to climb safely aboard a ship, because an acute pain while on a ladder might cause him to fall. The diagnosis was necessarily based on subjective complaints, since the type of arthritis was one which would not show up in an x-ray.

The evidence is uncontradicted that as a result of the accident libellant has a traumatic arthritis which will never get any better and will prevent him going up and down ladders with safety. We conclude that a proper award, apart from contributory negligence, would be $5,000. Reduced by 60% for contributory negligence, the proper award is $2,000. We remand the case to the district court with instructions to enter an award in that amount.

Modified and affirmed.