**Joseph BURKS, Plaintiff-Appellant,**

v.

**AMERICAN RIVER TRANSPORTA-TION COMPANY, Defendant-Appellee-Appellant,**

v.

**ROGERS TERMINAL AND SHIPPING CORP. and Northwestern National Casualty Co., Intervenors-Appellees-Appellants.**

No. 80–3261.

United States Court of Appeals, Fifth Circuit.*
Unit A

June 25, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Daniel L. Avant, Baton Rouge, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John O. Charrier, Jr., New Orleans, La., for American River Transp.

Eugene R. Groves, Thomas K. Kirkpatrick, Baton Rouge, La., for Rogers Terminal and Northwestern Nat. Cas. Co.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case presents a novel question: Does a longshoreman/seaman retain the right to bring an action based on unseaworthiness against a vessel or her owner despite the proscription in the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA)? We conclude that he does not.

## I.

At the time of the injury for which he seeks recovery in this suit, Joseph Burks was an employee of Rogers Terminal and Shipping Corporation (Rogers), a firm that provides stevedoring services at the Port of Baton Rouge, Louisiana. Burks had worked for Rogers for over 20 years, the last 15 of them principally aboard one of its vessels, a barge known as the K–1.

The K–1 is a non-propelled barge 132 feet in length, 45 feet in width and 10 feet in depth. It is specially equipped so that it can discharge bulk cargo, such as grain, from other barges directly onto oceangoing vessels. To perform its unloading operations, K–1 is towed out into the Mississippi River and made fast to the side of a receiving vessel. Barges are then brought up along the other side. A crane on K–1, using a clamshell bucket, lifts out the barges' cargoes and deposits the grain into a hopper on K–1. A marine leg (a belt with shovels) scoops the grain out of K–1, lifts it over the side, and deposits it in a pipe leading from the marine leg to a funnel over the hold on the receiving ship. The entire process takes place in mid-stream.

On October 31, 1976, K–1 and its crew were engaged in unloading grain from a barge (ART–402) owned by American River Transportation Company (ARTCO) and loading it onto a completely unrelated oceangoing vessel in the Mississippi River. Burks was injured while standing on a fiberglass hatch cover on ART–402 which gave way, causing him to fall about 20 feet into the hold. Burks sued ARTCO for negligence under the Jones Act, 46 U.S.C. § 688, and for unseaworthiness under the general maritime law. He did not sue his employer, Rogers.

The case was tried without a jury, and the District Court entered judgment dismissing both the Jones Act claim and the unseaworthiness claim. 486 F.Supp. 603 (M.D.La.1980). As to the Jones Act claim, the Court held that Burks had failed to prove ARTCO was guilty of any negligence. The Court also concluded that, whether or not Burks was a seaman as to Rogers, his employer, he was a longshoreman as to ARTCO who was not entitled, after the 1972 Amendments to the LHWCA, to sue ARTCO for unseaworthiness. Burks does not appeal the court's finding of no Jones Act negligence, but contests the decision on his unseaworthiness claim.

## II. *Sieracki Still Rules the Seas*

The Supreme Court's decision in *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), introduced the action for unseaworthiness, a species of liability without fault, to the general maritime law of the United States. Not until 40 years later, however, beginning with the decision in *Mahnich v. Southern S. S. Co.*, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, 1944 A.M.C. 1 (1944), did unseaworthiness begin to develop into a broad basis for recovery for maritime personal injuries.

The main mast of this development is *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90 L.Ed. 1099, 66 S.Ct. 872, 1946 A.M.C. 698 (1946), which rejected the notion that the vessel owner's duty to furnish a seaworthy vessel extended to only those seamen employed directly by him on his vessel. *Id.* at 90–94, 66 S.Ct. at 875–877. The Supreme Court held that the duty extended equally to longshoremen employed by an independent stevedoring contractor hired to unload the vessel. *Sieracki* rested on the rationale that because loading and unloading vessels was traditionally a seaman's duty, a longshoreman doing that work and incurring those risks of a seaman was entitled to the rights of a seaman, including recovery based on unseaworthiness.[1] Extending this rationale, later decisions recognized the unseaworthiness action in a variety of situations where harbor workers provided services traditionally done by seamen.[2]

*Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9 (1956), introduced a new twist. The Court created an implied warranty of workmanlike performance (WWLP) running from the contracting (e.g. stevedoring) company to the vessel and owner. Breach of this warranty by the stevedore or his employees entitled the vessel owner to full indemnity for any liability he incurred in an unseaworthiness action brought by one of the stevedore's employees, absent conduct on the shipowner's part "sufficient to preclude liability". *Waterman Steamship Corp. v. David*, 353 F.2d 660, 665, 1966 A.M.C. 30 (5th Cir. 1965), *cert. denied*, 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683 (1966), *citing Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, 1958 A.M.C. 501 (1958).[3] As developed

---

1. As a shorthand reference, "*Sieracki* seaman", meaning a harbor worker doing traditional work of a seaman and to whom is owed the warranty of seaworthiness, became outmoded under the 1972 Amendments. But otherwise the principle survives.

2. *E.g., The Tungus v. Skovgaard*, 358 U.S. 588, 595 n.9, 79 S.Ct. 503, 508, 3 L.Ed.2d 524, 530, 1959 A.M.C. 813, 818 (1959) (pump repairman); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, 1953 A.M.C. 1314 (1953) (carpenter doing ship repair); *Mortensen v. A/S Glittre*, 348 F.2d 383, 1965 A.M.C. 2016 (2d Cir. 1965) (painter); *Torres v. The Kastor*, 227 F.2d 664 (2d Cir. 1955) (shipcleaner); *Ross v. Steamship Zeeland*, 240 F.2d 820, 1957 A.M.C. 312 (4th Cir. 1957) (port watchman). The Supreme Court drew the line, however, at an electrician hired to overhaul a vessel's generators. The court focused on the highly specialized nature of the work and concluded that it was not of the type "traditionally done by the ship's crew". *United New York and New Jersey Sandy Hook Pilots Association v. Halecki*, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541, 1959 A.M.C. 588 (1959). *See* Comment, "Seamen and the Warranty of Seaworthiness in Maritime Injuries", 34 Tul.L.Rev. 572 (1960). *See generally* 2 Norris, *The Law of Maritime Personal Injuries* §§ 319–320 (3d ed. 1975).

3. *See also U. S. Lines Co. v. Williams*, 365 F.2d 332, 336 n.11, 1966 A.M.C. 2418 (5th Cir. 1966); *D/V Ove Skou v. Hebert*, 365 F.2d 341, 350 (5th Cir. 1966), *cert. denied*, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970).

in the subsequent cases, the warranty covered a great number of acts and omissions by the contracting company. *See* Proudfoot, *"The Tar Baby": Maritime Personal Injury Indemnity Actions*, 20 Stan.L.Rev. 423 (1968). As a result, stevedores were forced to bear full unlimited liability for their employees' injuries in an ever increasing number of cases,[4] despite § 5 of the Longshoremen's & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905, which prescribed expressly that an employer's liability under the Act would be exclusive and in place of all other liability to the employee or anyone entitled to recover damages on account of the employee's injury or death.[5]

To eliminate the circular and frequently unlimited liability flowing from *Sieracki* and *Ryan*, Congress amended the LHWCA in 1972.[6] It now provides that a "person covered under" the Act may no longer

bring an action against a third-party vessel owner "based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b).[7] Rather, the exclusive remedy against the third party vessel owner is a negligence action.[8]

Congress in the 1972 Amendments intended to abolish the unseaworthiness action *Sieracki* had given to longshoremen and harbor workers, the so-called *Sieracki*-seamen. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521, 527, 1979 A.M.C. 1167, 1171–72 (1979):

> Congress acted in 1972 ... to eliminate the shipowner's liability to the longshoremen for unseaworthiness and the stevedore's liability to the shipowner for unworkmanlike service resulting in injury to the longshoreman—in other words, to overrule *Sieracki* and *Ryan*.

---

4. *See*, e.g., *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732, 1964 A.M.C. 1075 (1964); *Waterman S.S. Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169, 1960 A.M.C. 1716 (1960); *Crumady v. The J. H. Fisser*, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, 1959 A.M.C. 580 (1959); *Weyerhaeuser, supra*.

5. § 905(a) of the Act provides:
   **Exclusiveness of liability**
   The liability of an employer prescribed in section 4 [33 USCS § 904] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this Act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the Act, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.
   Congress did not change the wording of this section in the 1972 Amendments in any way;

the sole modification was the addition of subsection (b) to § 905.

6. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L.No. 92–576, 86 Stat. 1251k–65 (amending 33 U.S.C. §§ 901–950). The amendments also extended the Act to workers not previously covered, improved the compensation benefits available under the Act, and changed portions of the Act's procedural machinery. *See* Note, 47 Tul.L.Rev. 1151 (1973).

7. Congress rejected an earlier draft of the amendments that would have eliminated liability for negligence as well. *See generally Proposed Amendments to the Longshoremen's and Harbor Workers' Compensation Act: Hearings on H.R. 247, H.R. 3505, H.R. 12006, and H.R. 15023 Before the Subcommittee on Labor of the House Committee on Education and Labor*, 92d Cong., 2d Sess. 65–133 (1972).

8. Even this remedy may be restricted where the injured person is employed directly by the shipowner. *See Durr v. Global Marine, Inc.*, 673 F.2d 740 (5th Cir. 1982); *Cavalier v. T. Smith and Son, Inc.*, 668 F.2d 861 (5th Cir. 1982); *Richardson v. Norfolk Shipbuilding & Drydock Corp.*, 621 F.2d 633, 1980 A.M.C. 2247 (4th Cir. 1980); *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789, 1979 A.M.C. 2021 (2nd Cir. 1979); *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 1975 A.M.C. 2527 (3rd Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

See also [1972] U.S.Code Cong. & Admin. News 4701–05;[9] 1A Benedict on Admiralty § 13 (7th ed. E. Jhirad, A. Sann, N. Golden & B. Chase 1980).

## 9. ELIMINATION OF UNSEAWORTHINESS REMEDY

\* \* \* \* \* \*

The Committee also rejected the thesis that a vessel should be liable without regard to its fault for injuries sustained by employees covered under this Act while working on board the vessel. Vessels have been held to what amounts to such absolute liability by decisions of the Supreme Court, commencing with *Seas Shipping Co. v. Sieracki*, 328 U.S. 25 [66 S.Ct. 872, 90 L.Ed. 1099][1] (1946) which held that the traditional seamen's remedy based on the breach of the vessel's absolute, nondelegable duty to provide a seaworthy vessel was also available to longshoremen and others who performed work on the vessel which by tradition has been performed by seamen. Under the *Sieracki* case, vessels are liable, as third parties, for injuries suffered by longshoremen as a result of "unseaworthy" conditions even though the unseaworthiness was caused, created, or brought into play by the stevedore (or an employee of the stevedore) rather than the vessel or any member of its crew. For example, under present law, if a member of a longshore gang spills grease on the deck of a vessel and a longshoreman slips and falls on the grease a few moments later, the vessel is liable to pay damages for the resulting injuries, even though no member of the crew was responsible for creating the unseaworthy condition or was even aware of it. Furthermore, in the example given above, under the Supreme Court's decision in *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.*, 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133][2] (1956), the vessel may recover the damages for which it is liable to the injured longshoreman from the stevedore which employed the longshoreman on the theory that the stevedore has breached an express or implied warranty of workmanlike performance to the vessel. The end result is that, despite the provision in the Act which limits an employer's liability to the compensation and medical benefits provided in the Act, a stevedore-employer is indirectly liable for damages to an injured longshoreman who utilizes the technique of suing the vessel under the unseaworthiness doctrine.

The Committee heard testimony that the number of third-party actions brought under the *Sieracki* and *Ryan* line of decisions has increased substantially in recent years and that much of the financial resources which could better be utilized to pay improved compensation benefits were now being spent to defray litigation costs.

\* \* \* \* \* \*

The Committee believes that especially with the vast improvement in compensation benefits which the bill would provide, there is no compelling reason to continue to require vessels to assume what amounts to absolute liability for injuries which occur to longshoremen or other workers covered under the Act who are injured while working on those vessels. In reaching this conclusion, the Committee has noted that the seaworthiness concept was developed by the courts to protect seamen from the extreme hazards incident to their employment which frequently requires long sea voyages and duties of obedience to orders not generally required of other workers. The rationale which justifies holding the vessel absolutely liable to seamen if the vessel is unseaworthy does not apply with equal force to longshoremen and other non-seamen working on board a vessel while it is in port.

Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness.

\* \* \* \* \* \*

*Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness.* Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act, *Crumedy [Crumady] vs. The J. H. Fisser*, 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413], *Albanese vs. Matts [Maats]*, 382 U.S. 283 [86 S.Ct. 429, 15 L.Ed.2d 327], *Skibinski vs. Waterman SS Corp.*, 330 F.2d 539; for the manner or method in which stevedores or employees of stevedores subject to this Act perform their work, *A. N. G. Stevedores vs. Ellerman Lines*, 369 U.S. 355 [82 S.Ct. 780, 7 L.Ed.2d 798], *Blassingill vs. Waterman SS Corp.*, 336 F.2d 367; for gear or equipment of stevedores or employees of stevedores subject to this Act whether used aboard ship, or ashore, *Alaska SS Co. vs. Peterson*, 347 U.S. 396 [74 S.Ct. 601, 98 L.Ed. 798], *Italia Societa vs. Oregon Stevedoring Co.*, 376 U.S. 315 [84 S.Ct. 748, 11 L.Ed.2d 732], or for other categories of unseaworthiness which have been judicially established.

\* \* \* \* \* \*

The Committee also believes that the doctrine of the *Ryan* case, which permits the vessel to recover the damages for which it is liable to an injured worker where it can show that the stevedore breaches an express or implied warranty of workmanlike perform-

Yet several commentators speculated that some longshoremen and harbor workers might still have the right to bring an unseaworthiness action.

[U]nseaworthiness actions by *Sieracki* seamen against a vessel owner may still be permitted because of several possible loopholes in the 1972 amendments. The amendments prohibit an unseaworthiness action by a "person covered under this Act". Presumably, if there is a *Sieracki* seaman not covered under the Longshoremen's Act, he may still bring an unseaworthiness action against a vessel owner.

Gorman, *The Longshoremen's and Harbor Workers' Compensation Act—After the 1972 Amendments*, 6 J.Mar.L. & Com. 1, 15 (1974). *See also* Robertson, *Negligence Actions by Longshoremen Against Shipowners Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act*, 7 J.Mar.L. & Com. 447, 448 (1976); G. Gilmore & C. Black, *The Law of Admiralty* § 6–57, at 449 (2d ed. 1975).

## Swan Lake: Tiptoe Through the Loophole

This Court's recent decision in *Aparicio v. Swan Lake*, 643 F.2d 1109, 1981 A.M.C. 1887 (5th Cir. 1981), proved that those commentators were, or might be, right, or nearly right. Aparicio, a Panama Canal Company employee, was injured while working aboard a vessel in the Panama Canal. The District Court dismissed his unseaworthiness claim against the vessel owner, holding that the 1972 amendments to the Act had abolished the unseaworthiness action.[10] We reversed. Judge Rubin pointed out that Aparicio was not covered under the LHWCA for two independent reasons: first, the Canal is outside the territorial reach of the LHWCA; second, the Panama Canal Company is an agency of the United States, and as such its employees are excluded from benefits under the Act. He then stated, "Until Congress abrogates the remedies created by the Supreme Court as they apply to maritime workers not covered by the LHWCA, those workers remain entitled to relief and their employers and vessel

ance is no longer appropriate if the vessel's liability is no longer to be absolute, as it essentially is under the seaworthiness doctrine. Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker.

\* \* \* \* \* \*

Accordingly, the bill expressly prohibits such recovery, whether based on an implied or express warranty. It is the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort.

\* \* \* \* \* \*

The Committee has also recognized the need for special provisions to deal with a case where a longshoreman or ship builder or repairman is employed directly by the vessel. In such case, notwithstanding the fact that the vessel is the employer, the Supreme Court, in *Reed v. S.S. Yaka*, 373 U.S. 410 [83 S.Ct. 1349, 10 L.Ed.2d 448][8] (1963) and *Jackson v. Lykes Bros. Steamship Co.*, 386 U.S. 731 [87 S.Ct. 1419, 18 L.Ed.2d 488][9] (1967), held that the unseaworthiness remedy is

available to the injured employee. The Committee believes that the rights of an injured longshoreman or ship builder or repairman should not depend on whether he was employed directly by the vessel or by an independent contractor. Accordingly, the bill provides in the case of a longshoreman who is employed directly by the vessel there will be no action for damages if the injury was caused by the negligence of persons engaged in performing longshoring services. Similar provisions are applicable to ship building or repair employees employed directly by the vessel. The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoremen or ship builders or repairmen as apply when an independent contractor employs such persons.

**10.** The district courts in this Circuit had reached contrary conclusions on the question whether the 1972 amendments to the LHWCA overruled *Sieracki* and *Ryan* even as to those employees not covered under the LHWCA. *Compare Pinto v. Vessel "Santa Isabel"*, 492 F.Supp. 689 (D.C.Z.1980) *and Guevara v. Compania Sud Americana de Vapores*, 1978 A.M.C. 2000 (D.C.Z.1978), *with Grice v. A/S J. Ludwig Mowinckels*, 477 F.Supp. 365 (S.D.Ala.1979).

owners remain bound by the *Sieracki-Ryan* doctrine." *Id.* at 1118.[11]

Yet *Aparicio* dealt with a narrow loophole in the LHWCA—actually no loophole at all, just a hole where the Act did not apply. It recognized that those employees not covered by the LHWCA should not get the short end of Congress' stick. It did not, as the Court took pains to point out, 643 F.2d at 1116, interfere with the amendments to the LHWCA as they relate to *covered employees.*

The question whether Burks can bring an action for unseaworthiness against ARTCO depends, then, first, on whether or not he is covered under the LHWCA. Burks' situation differs from that of Aparicio. He concedes that he performs the work of the longshoreman in American waters. A longtime member of the longshoreman's union, he works for a stevedoring company and is engaged primarily in loading and unloading seagoing cargo. He accepted disability benefits under the LHWCA for this injury. The very title of the LHWCA indicates that he falls among those employees Congress intended to bring under the Act's coverage.[12]

The wording of the Act, however, engenders some confusion that we should dispel. While applying to "any person engaged in maritime employment, including any longshoreman . . . engaged in longshoring operations", it excludes any "member of a crew of any vessel" from benefits under the Act. 33 U.S.C. § 902(3). Burks argues that he falls within that exclusion and, like Aparicio, retains his action for unseaworthiness. We disagree. In discussing his assertions, we divide the issue into three questions: (1) Are K–1 and ART–402 "vessels" within the meaning of the LHWCA; (2) Was Burks a member of the crew of K–1 or ART–402; and (3) Does the LHWCA entitle him to sue ART–402 for unseaworthiness?

#### 1. A vessel?

In *Norton v. Warner Co.*, 321 U.S. 565, 571 n.4, 64 S.Ct. 747, 751, 88 L.Ed. 931, 937, 1944 A.M.C. 337, 342 (1944), the Supreme Court relied on 1 U.S.C. § 3 for the definition of vessel as that term is used in the LHWCA. The term includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water". The Court held that the craft under consideration in *Norton*, a barge without motive power of its own, fell within that definition. So do K–1 and ART–402. Not only is K–1 *capable* of being used for transportation on water, it is so used regularly to transport special unloading equipment from place to place on the river as needed. ART–402, a grain-carrying barge on the Mississippi River, certainly falls within the definition. We have held that a derrick barge used to load and unload oilfield equipment is a vessel. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 1977 A.M.C. 1090 (5th Cir. 1977); *accord, Salgado v. M. J. Rudolph Corp.*, 514 F.2d 750, 755–56, 1975 A.M.C. 888, 895 (2nd Cir. 1975) (floating crane). Even far more exotic watercraft have been deemed vessels. Special purpose structures whose primary function is not transportation, such as a drilling barge with retractable legs that raise the barge out of the water, are vessels. *Offshore Co. v. Robison*, 266 F.2d 769, 779, 1959 A.M.C. 2049, 2063 (5th Cir. 1959). Even a barge submerged and in use as a drilling platform is a vessel. *Producers Drilling Co. v. Gray*, 361 F.2d 432, 437, 1966 A.M.C. 1260 (5th Cir. 1966). No doubt the three men in a tub would also fit within our definition, and one probably could make a convincing case for Jonah inside the whale. Thus K–1 and ART–402 are vessels.

#### 2. Member of a Crew?

*Offshore Co. v. Robison, supra,* sets out this Court's formulation for determining who falls within the meaning of

---

11. *But cf. Normile v. Maritime Company of the Philippines*, 643 F.2d 1380, 1981 A.M.C. 2470 (9th Cir. 1981) (non-covered employees did not retain a *Sieracki* unseaworthiness action).

12. *See also P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225, 1979 A.M.C. 2017 (1979); *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320, 1977 A.M.C. 1037 (1977).

those terms: the injured workman must (1) be assigned permanently to a vessel, or perform a substantial part of his work on a vessel, and (2) contribute to the function of the vessel or the accomplishment of its mission, or aid in its operation or maintenance. 266 F.2d at 779. *See also Braniff v. Jackson Ave.-Gretna Ferry*, 280 F.2d 523, 526–527, 1961 A.M.C. 1728, 1729–30 (5th Cir. 1960). The question is one ordinarily left to the trier of fact, *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1345 (5th Cir. 1980), so that the "clearly erroneous" standard applies, F.R.Civ.P. 52(a); *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24, 1954 A.M.C. 1999 (1954).

██ Burks lacked the permanent connection to ART–402 that *Robison* requires. The record proves that he was a longshoreman briefly on board ART–402 to perform a longshoreman's duties. That brief assignment does not qualify Burks as a member of ART–402's crew. Even if Burks was a seaman as to Rogers, his employer, because of his relatively permanent connection with K–1, a point we need not decide, he did not sue Rogers.[13] Whatever rights he might have as a *Sieracki* seaman against Rogers for potential injuries on K–1, the "member of a crew" language in § 905(b) clearly refers to the vessel that is charged with negligence—here, ART–402. Burks' relation to K–1 is thus immaterial. As to ART–402, the District Court found, and we agree, that Burks was a longshoreman whose injury falls squarely within the coverage of the LHWCA.

██ The LHWCA permits a longshoreman to sue a vessel or its owner as a third party for its negligence. Overruling *Ryan*,

it expressly abrogates any right of recovery by the vessel against the contracting employer. What Congress giveth, however, it can also taketh away. Thus § 5(b) of the LHWCA (33 U.S.C. § 905(b)) expressly states that the injured employee may *not* sue the vessel for unseaworthiness: "The liability of the vessel under this sub-section shall not be based upon the warranty of seaworthiness." Burks, we assume without deciding, could sue Rogers for injuries caused by the unseaworthiness of K–1, but he did not do so. He could sue ARTCO for injuries resulting from negligence on ART–402, but the Judge found no negligence. He *cannot* sue ARTCO for unseaworthiness: the 1972 Amendments to the LHWCA explicitly abrogate such a cause of action. Instead, he must accept his LHWCA remedies under the other sections of the Act.

*Sieracki* does not pose an obstacle to our holding, for the 1972 Amendments effectively have overruled that case as it applied to *covered* longshoremen/seamen. *Aparicio*, in turn, involved employees who are expressly excluded from coverage. While we agree that such employees should retain their *Sieracki* rights, we emphasize that Burks, a longshoreman if ever there were one, was not a member of the crew of ART–402. Even if Burks is a *Sieracki* seaman as to K–1, the 1972 Amendments preclude him from suing ARTCO, as a third party, for unseaworthiness and left him only the negligence action. The Act could not be more clear.

Burks argued negligence to the District Court, lost, and did not appeal that point. He has no unseaworthiness cause of action against ARTCO under the 1972 Amend-

**13.** In *Smith v. M/V CAPTAIN FRED*, 546 F.2d 119, 1977 A.M.C. 353 (5th Cir. 1977), this Court held that the rule of *Reed v. The YAKA*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, 1963 A.M.C. 1373 (1963), permitting an employee to sue for negligence the vessel on which he worked, which also was his employer, survived the 1972 Amendments to the LHWCA. Citing the legislative history, [1972] U.S.Code Cong. & Admin.News, at 4705, the Court read § 905(b) as indicating no purpose to recognize a difference in treatment as between one employed by a contractor and one employed directly by the

shipowner. *See supra*, note 9. And in *Longmire, supra*, after a detailed discussion of the Amendments and their effect on seaman status, the Court, relying upon *CAPTAIN FRED*, held that an employee could sue the vessel, his employer, for negligence, notwithstanding the exclusivity language of the LHWCA. *See Durr* and *Cavalier, supra*, note 8. Those cases do not govern here, however, where Burks sued the owner of a vessel other than the one (K–1) as to which he claimed to be a member of the crew.

ments to the LHWCA. It follows that the District Court correctly dismissed the suit.

AFFIRMED.

WISDOM, Circuit Judge, reserves the right to issue a concurring or dissenting opinion at a later date for publication at that time.